## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MGP INGREDIENTS, INC., a Kansas Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Electronically Filed |
| vs. | ) ) ) | Case No. 06-2318 JWL- |
| MARS, INCORPORATED, a Delaware Corporation, | ) ) ) | **ORAL ARGUMENT REQUESTED** |
| and | ) ) | |
| S&M NUTEC, LLC, a Missouri Limited Liability Company, | ) ) ) | |
| Defendants. | ) ) | |

---

## <u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND MEMORANDUM IN SUPPORT THEREOF</u>

Defendants Mars, Incorporated ("Mars") and S&M Nutec, LLC ("SMN"),

pursuant to D. Kan. Rule 7.3(c), oppose Plaintiff MGP Ingredients, Inc.'s ("MGPI's") Motion to

Compel ("Motion").  Plaintiff seeks an order compelling Defendants to relate more than 38,000

pages of documents to 54 separate discovery requests.  As Defendants have complied with their

obligations under the Federal Rules of Civil Procedure to produce documents as they were kept

in the usual course of business, Defendants respectfully ask this Court to deny Plaintiff's motion

to compel.

# BACKGROUND

Pursuant to this Court's orders and Defendants' obligations under the Federal Rules of Civil Procedure, Defendants have undertaken significant efforts to collect and produce discoverable documents as they are kept in the usual course of business.  In the four months since the entry of the Court's Scheduling Order in this case, Defendants interviewed employees located across the United States and Canada, including Los Angeles, California, Toronto, Ontario, Kansas City, Missouri, and Nashville, Tennessee and collected from those employees over 30,000 documents, consisting of hundreds of thousands of pages of hardcopy and electronically-stored information ("ESI").  Opp. Ex. 1 (Declaration of Aaron P. Maurer) at ¶¶ 2, 4.  After reviewing these documents for responsiveness and privilege, Defendants produced to MGPI approximately 38,000 pages of information responsive to Plaintiff's document requests or Defendant's disclosure obligations.  Opp. Ex. 1 at ¶ 2.   In light of this voluminous production, MGPI's claim that "No documents were produced" by Defendants in response to Plaintiff's discovery requests, Motion at 2, is simply puzzling and completely wrong.

The collection and review of these documents was not an easy task; Greenies® dog chew products – which are the subject of the complaint in this case – were Defendant SMN's first product and remain the bulk of its business.  Accordingly, there are a large number of documents in the possession of SMN employees that relate to Greenies®.  Likewise, Defendant Mars has long been involved in the pet foods industry and has a large amount of information regarding dog chews, including a large amount of information created by its dog chew development team related to the issues in this case.  Although Defendants, with much expense and effort, have now reviewed and produced thousands of responsive documents to Plaintiff, Plaintiff argues that Defendants should have to categorize these documents in accordance with 54 separate requests for production that Plaintiff has cumulatively served on

SMN and Mars.  Respectfully, this request should be denied, as Defendants' have met their burden under the Federal Rules of Civil Procedure when making their initial disclosures and in further responding to Plaintiff's discovery requests.

### A.    Initial Disclosures

MGPI filed this case on July 31, 2006.  On November 27, 2006, this Court issued a Scheduling Order that required that the parties, on or before January 15, 2007, provide as initial disclosures documents that the parties "may use to support [their] claims or defenses," including "information [the disclosing party] may use to support its denial or rebuttal of the allegations, claim, or defense of another party."  Scheduling Order, ¶ 2(a).  Defendants immediately made arrangements to meet with, and collect relevant documents from employees likely to have information relevant to the issues presented in this case.  Opp. Ex. 1 at ¶¶ 3-4.  Defendants also immediately set up a relationship with a consulting company that specializes in electronic discovery in order to ensure that ESI was collected and provided as required by the recent amendments to the Federal Rules.

### 1.    Collection

In general, Defendants' collection efforts proceeded as follows.  Defendants made an effort in November and December to meet with each employee likely to have relevant information.  Opp. Ex. 1 at ¶ 4.  In the course of those meeting, Defendants ascertained which files or locations likely had discoverable information.  Those documents were then collected and shipped to a vendor for scanning.  *Id.* at ¶¶ 5-8.  At no time were documents reshuffled, mixed, or otherwise changed from the form in which they existed; Defendants simply placed them in boxes in the order in which they were collected, in the format in which they existed, and then delivered to a central holding area where they awaited pick-up from the vendor.  Concurrent with the collection of paper documents, the e-discovery vendor hired by Defendants made copies of

relevant hard-drives, network folders, and email mailbox files for relevant employees.  *Id.* at ¶¶ 9-10.

### 2.     Hardcopy Document Review

The hardcopy vendor, after scanning the documents, returned the originals to the personnel from which they came, and provided electronic image copies to Defendants.  To ensure documents could be produce as they were kept in the usual course of business, the hardcopy vendor provided in electronic form, images that are as close to the paper copies as original.  Opp. Ex. 1 at ¶¶ 5-8.  That is, the documents were provided with electronic information corresponding to document breaks, post-it or other notes (if existing) are scanned, and the documents were imaged in the order in which they were provided.  *Id.*  Counsel then reviewed the documents and marked them for responsiveness with respect to Defendants' initial disclosure obligations, and also noted privileged documents or information for logging.  *Id.*

### 3.     ESI Document Review

The e-discovery vendor collected 18.5 gigabytes of data, consisting of email files as well as other electronic data files (e.g., MS Word, Excel, Powerpoint).  Opp. Ex. 1 at ¶ 10.  Subsequently, the e-discovery vendor loaded the collected ESI onto a database and ran a search designed to return the files relevant to this case.  *Id.*  The resulting electronic documents were then converted into single-page .tiff files and provided to counsel.  *Id.*  To ensure ESI was produced in the ordinary course in which it was kept, the standard operating procedure of the e-discovery vendor was to provide electronic data files in a format such that they are arranged according to custodian, then directory, then any subdirectory, then file name.  *Id.* at ¶ 11.  The directory/subdirectory/file name are arranged in descending alphabetical order.  *Id.*  For e-mail files, the files are provided according to custodian, and then in chronological order as found in

the custodian's mailbox.  *Id.* at ¶ 12.[1]  To the extent an email has an attachment, the attachments were provided directly behind the email containing the attachment.  *Id.*  The documents provided to counsel appeared to have been processed according to this standard operating procedure.  As with the hardcopy documents, Counsel then reviewed the documents and marked them for responsiveness with respect to Defendants' initial disclosure obligations, and also noted privileged documents or information for logging.  *Id.* at ¶ 13.

### 4.    Production

On January 15, 2007, in accordance with the Scheduling Order, Defendants produced Bates Range GR0000001-GR0027717 to Plaintiff.  *See* Opp. Ex. 2 (January 15, 2007 Letter from Aaron P. Maurer to Peter F. Daniel.)  Rather than produce 11+ boxes of paper, Defendants' production was made electronically, in single-page .tiff format and with a "load file" that enabled Plaintiff to load the production on a database with document break information, a format that previously had been discussed with, and not objected to by, counsel for MGPI.  Opp. Ex. 1 at ¶ 20.  The production was sorted according to custodian, and Defendants identified with this production the custodian's files from which each range came.  *See* Opp. Ex. 2 at 1-2.  Defendants later further identified in response to a phone conversation with Plaintiff regarding the production which files were electronically-sourced and which were hard copy-sourced.  *See* MGPI Mot. Ex. 4 at 2-3. Defendants also produced in this initial production a CD (marked GR0027718) containing an Excel spreadsheet that included production information from every commercial batch of Greenies® dog chew produced using the new Mars formula for the dog chew.  *See* Opp. Ex. 2 at 2.  To the extent that MGPI complains that the

---

[1] A document listing all of the ESI files produced to-date cross-referenced with production number and filepath (as provided by the e-discovery vendor) and source information has been provided to Plaintiff.  Opp. Ex. 1 at ¶ 15.

"Rule 26 documents produced are not in chronological order within the individual's 'files',"

Motion at 3, that is plainly wrong as to the electronically-sourced email documents, and – even if

true for portions of the hardcopy documents produced – simply reflects how the hardcopy

documents were kept.  MGPI's claim that the documents "are not segregated (as far as counsel

for plaintiff can ascertain) by subject matter," Motion at 3, is answered by the same response –

not true in the vast majority of cases and to the extent it is true, is reflective of the way the

documents were kept and provided to Counsel for Defendants.

      **B.**      **Defendants' Response to Plaintiff's Requests for Production**

      At 5:50 p.m. on a Friday afternoon, January 5, 2007, a month-and-a-half after the

Scheduling Conference in this case, Plaintiff served its first Requests for Production on

Defendants.  Opp. Ex. 1 at ¶ 16.  By this time, a mere ten days before the initial disclosure

deadline, the collection and review of Defendants' initial disclosure documents was well under

way and nearing completion.

      After fulfilling its obligations under the initial disclosures in January, Defendants

then turned to the process of reviewing and producing additional documents in response to the

Plaintiff's Requests for Production.  To do so, Defendants went back to the database of collected

documents and reviewed for production documents that were not produced in the initial

disclosure phase.  *Id.* at ¶ 17.  In doing this review, it became apparent that there was an overlap

between the subject matter covered by documents in Defendants' initial production and

Plaintiff's document requests, and thus already in Plaintiff's possession.[2]  Defendants did not, of

course, re-produce these already produced documents, but instead focused on furnishing to

Plaintiff documents not already produced.  Defendants also identified other custodians and

---

[2] Defendants specifically noted this overlap in their production of initial disclosure documents.
Opp. Ex. 2 at 1.

collected documents from them for review and production substantially in the manner as described above. *Id.* at ¶ 18.

As Plaintiff admits in its Motion, Defendants timely responded and objected to the document requests on February 7, 2007.   MGPI Motion, at p. 1.  However, Plaintiff's contention that "No documents were produced," in response to the requests, MGPI Motion, at p. 2, is a misstatement.  In addition to its initial disclosure production, Defendants produced to Plaintiff on February 24, 2007 the additional documents that had been identified in response to the Requests for Production as set forth above, Bates numbered GR0027719 – GR0038156, and identified them being produced, *inter alia*, pursuant to Plaintiff's first set of Requests for Production.[3]  *See* MGPI Mot. Ex. 5.

Defendants' collection of documents is now substantially complete, and Defendants are on track to substantially complete their production by the end of this month, as was stated to Plaintiff in correspondence on March 2, 2007.  *See* Opp. Ex. 4 (March 2, 2007 Letter from Aaron P. Maurer to Peter F. Daniel) at p. 2.  Defendants' collection and production efforts comport with the Federal Rules of Civil Procedure and Plaintiff's Motion should be denied.

**ARGUMENT**

Defendants have collected and produced to MGPI a significant number of documents in a short period of time, and have done so in a manner designed to produce the documents "as they are kept in the usual course of business."  Fed. R. Civ. P. 34(b).  Plaintiff's

---

[3] MGPI also implies that Defendants' production on a rolling basis is improper, Motion at 2. This is curious, as MGPI has done the same, with a far lesser volume of documents.  It served its responses Defendant's document requests without production of any documents, and when some 1100 pages later were produced, it was with the caveat that "I will be gathering additional documents . . . ."  Opp. Ex. 3 (March 9, 2007 Letter from Peter F. Daniel to Aaron P. Maurer.)

Motion to compel is noticeably and completely silent as to what further steps Defendants could have taken to produce these documents as they are kept in the usual course of business. Indeed, Plaintiff does not explicitly claim anywhere in its Motion that Defendants actually failed to produce documents as they were kept in the ordinary course of Defendants' business.

Although Defendants repeatedly informed MGPI that the documents produced were in the form as kept in the ordinary course of business, and Defendants offered to produce for MGPI an affidavit describing the process in which the documents in this case were collected and produced (*see* Opp. Ex. 6 (March 9, 2007 letter from Aaron P. Maurer to Peter F. Daniel) at 3 and the attached Declaration of Aaron P. Maurer, Opp. Ex. 1), MGPI instead decided to bring this matter to the Court in the Motion. The Motion apparently is intended to create the impression of Defendants' non-compliance with the rules. The Motion, however, fails to reflect the actual good faith review and document production process that Defendants have undertaken. Instead, MGPI has set forth in a headlong rush to file this Motion and impose costly discovery requirements on Defendants. The Motion should be denied for at least four reasons.

First, Defendants have produced documents pursuant to the requirements of Rule 34(b). Despite Plaintiff's failure to discuss in its opening brief the qualifications of a production that would be considered a production of documents "kept . . . in the usual course of business," this Court has addressed the issue many times in the past. The primary purpose of this provision of Rule 34(b), as this Court has recognized repeatedly, is to prevent parties from "deliberately ... mix[ing] critical documents with others in the hope of obscuring significance." *In re Urethane*, 2006 WL 1895456 at *1 (D. Kan. 2006). There was no mixing of documents here, and certainly no intent to "obscur[e] significance" of any document. Instead, as set forth above and in the accompanying affidavit of counsel, documents were collected, scanned, reviewed for

responsiveness and privilege, and produced in the same sequential order as they are maintained in Defendants' files.

Magistrate Judge Bostwick, writing for this Court in *Bergersen v. Shelter Mutual Insurance Company*, No. 05-1044-JTM-DWB, 2006 WL 334675 (D.Kan. Feb. 14, 2006) set forth additional considerations that could be followed when producing documents pursuant to Fed. R. Civ. P. 34(b) electronically, as the documents here were produced by Defendants, including:

> (1) keying which documents were produced from electronic files and which were scanned from hard-copy files, (2) keeping multi-page documents as a unit, (3) providing source information which identifies, where possible, the custodian of a particular document or set of documents, etc.

*Id.* at *2. Each of these guidelines was followed by Defendants in this case. Produced documents were grouped by source in each production, and within each source, as to electronic or hard-copy origin. This information was provided to Plaintiff. Additionally, Defendants provided an electronic "load" file, setting forth document break information, so that it was clear to Plaintiff where documents began and ended.[4]

Second, the cases cited by MGPI in its Motion, *Johnson v. Kraft Foods North America*, 236 F.R.D. 535 (D. Kan. 2006) and *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611 (D. Kan. 2005) are inapposite. In *Cardenas*, the producing party produced documents arranged according to twelve different categories. It however did not "explain the origin" of the twelve categories or who maintained the documents, and did not otherwise

---

[4] Plaintiff's initial production, in contrast, consisted two boxes of documents – primarily printed out emails – wherein each page was separated by a blue separator sheet (without regard to document breaks) and in which each email bore the name of the employee (apparently a paralegal or other administrative assistant – not the document custodian) who printed them out.

establish that the documents were produced as they were maintained. *Id.* at 618. Similarly, this Court in *Johnson* found that documents were not produced according to Rule 34(b) because the producing party "fail[ed] to provide the Court with any information, let alone evidentiary proof, to establish that the documents were produced as kept in the ordinary course of business." Johnson, 236 F.R.D. at 540-41. Here, to the contrary, such information and evidence has been provided.

MGPI implies in its Motion that it is unable to proceed with its prosecution of this case due to Defendants' refusal to categorize its documents requests as to their content for certain information, such as "the contents of the current Greenies® formula and the processes for creating the so-called MARS Greenies® formulation (RPD to MARS 2, RPD to SMN 2), records of any Greenies®-like product investigated by MARS prior to its acquisition of SMN (RPD to MARS 2), and records of Greenies® formulas investigated by MARS before deciding on the current formulation (RPD to MARS 6)." MGPI Motion at p. 3.

In its apparent rush to create the misimpression that Defendants are not complying with their discovery obligations, MGPI leaves out the key fact that it sought this exact same information in its First Set of Interrogatories to Defendant, and that Defendant provided this very information in response to those interrogatories. *See* Opp. Ex. 5, Excerpted SMN's Responses and Objections to Interrogatories Nos. 1-4. MGPI also discusses in its Motion a broad range of communications from and to certain parties and persons, but does not state any reason that the burden on Defendants to find the communications MGPI seeks is substantially different than for MGPI to find the communications that it wants.

Third, Plaintiff's Motion to have Defendants' categorize the documents provided pursuant to Defendants' initial disclosure obligations should be denied because of Plaintiff's

delay in serving its Requests for Production on Plaintiff.  The parties' Rule 26(f) conference in this case was conducted by way of a series and phone calls starting October 30, 2006.  On November 9, 2006, the parties submitted a proposed joint planning report setting forth the results of the Rule 26(f) conference to the Court.  According to Rule 26(d), at any time after November 9, 2006 (at the latest – and possibly as early as October 30, 2006), Plaintiff could have served written discovery on Defendants.  However, Plaintiff did not do so, instead waiting until January 5, 2007 – ten calendar days before the initial document disclosure deadline – to serve its Requests for Production.  At that point, there was no way that Defendants could have, even had Plaintiff raised the issue at that time, characterized their Rule 26 initial disclosure document production according to the "categories" MGPI arbitrarily set forth in its Requests for Production.  And, of course, Plaintiff did not state at that time its request that Defendant organize its production in any way other than as kept in the ordinary course of business according to Rule 34(b).[5]

Finally, to the extent, the Court entertains Plaintiff's requested relief, Defendants respectfully request that the Court consider separately electronic and hardcopy documents. Effective December 1, 2006, Rule 34 was amended to provide guidance for production of ESI. As amended, Rule 34(b) provides that:

> (i) a party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request;

---

[5] Defendants' two-step production of documents necessarily was required by the timing of the initial disclosure obligations and Plaintiff's later service of discovery requests.  To obviate any argument that Defendants' production falls outside of Rule 34(b) because of this two-part production, Defendants have undertaken to re-produce the complete production set as a single, unified whole, which is being done contemporaneous with the filing of this opposition.

> (ii) if a request does not specify the form or forms
> for producing electronically stored information, a
> responding party must produce the information in a
> form or forms in which it is ordinarily maintained
> or in a form or forms that are reasonably usable....

Fed. R. Civ. P. 34(b) (amended Dec. 1, 2006).  Defendants production of ESI comports with the text and purpose of Rule 34(b).

Absent from MGPI's five-page Motion is any claim that Defendants failed to produce ESI as it is kept in the usual course of business.  Indeed, Defendants produced ESI-sourced documents by, *inter alia*, providing ESI for each custodian as it appeared in the custodian's computer directory and subdirectories.  Defendants similarly produced e-mail documents for each custodian in the chronological order found in the custodian's mailbox.  For e-mails with attachments, Defendants produced attachments directly behind e-mail containing those attachment.  That production is consistent not only with how Defendants maintained ESI in their usual course of their business, but also with the stated purpose of Rule 34(b)(i), which is "to protect against deliberate or inadvertent production in ways that raise unnecessary obstacles for the requesting party."  Advisory Comm.'s Note to Rule 34(b) (2006).  As this is an area where MGPI has not explained what more Defendants could have done to produce ESI as kept in the ordinary course of business – despite the fact that Defendants specifically raised this issue during the meet and confer process, *see, e.g.*, Opp. Ex. 4 at 2 – and MGPI did not address this issue in its opening brief, MGPI should be precluded from arguing this point further.  *See Peterson v. Brownlee*, 314 F. Supp. 2d 1150, 1152 n.2 (D. Kan. 2004) ("Courts in this district generally refuse to consider issues raised for the first time in a reply brief.") (citations omitted); *see also* Minshall v. McGraw Hill Broad. Co., 323 F.3d 1273, 1288 (10th Cir. 2003) (argument raised for the first time in reply brief is waived).

Moreover, when, as here, discovery requests do not specify the form for producing ESI, a responding party "may produce the information in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable."   Rule 34(b)(ii).  In this litigation, Defendants produced ESI in the form MGPI acknowledged was appropriate for Defendants' initial disclosures.[6]  Opp. Ex. 1 ¶ 20.  That is, Defendants produced ESI in single-page tiff format with a "load file" that enabled MGPI to load the production on a database, and Defendants identified the source of each file by custodian.

\* \* \*

Defendants have made every effort to produce their documents in this litigation "as they are kept in the usual course of business," Fed. R. Civ. P. 34(b), and they should be permitted to rely on the provision of Rule 34 that permits production in such manner.  As is increasingly common, the bulk of Defendants' production in this case consists of ESI.  If, when faced with a large production of electronic information, litigants can no longer rely on the provision of Rule 34 that permits documents to be produced as they are usually kept, the time and expense associated with document discovery will dramatically increase.  Indeed, it would be nothing short of a monumental task for Defendants to identify which of Plaintiff's fifty-four (54) separate requests for production each of the thousands of produced documents in this case is responsive to (if any).  Defendants should not be required to undertake such a task.

---

[6]     "[A] party need not produce the same electronically stored information in more than one form."  Rule 34(b)(ii); <u>Williams v. Sprint/United Mgmt. Co.</u>, Civ. Action No. 03-2200-JWL-DJW, 2006 WL 3691604, at \*7 (D. Kan., 2006) (Waxse, J.) (same).  In particular, MGPI has not requested metadata, but rather has consented to production of ESI in a single-page tiff format .  <u>See</u> <u>id.</u>; Opp. Ex. 1 ¶ 20.

## ORAL ARGUMENT REQUESTED

Pursuant to Local Rule 7.2, Defendants hereby request oral argument on this matter.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court deny Plaintiff's Motion to Compel.

Date:   March 23, 2007                    Respectfully submitted,

                                          **STINSON MORRISON HECKER, LLP**


                                             /s/ Brian K. O'Bleness_____
                                          Brian K. O'Bleness, KS Bar No. 77892
                                          bobleness@stinsonmoheck.com
                                          Jodi M. Hoss, KS Bar No. 20741
                                          jhoss@stinsonmoheck.com
                                          1201 Walnut Street, Suite 2900
                                          Kansas City, MO 64106
                                          (816) 842-8600
                                          (816) 691-3495 (facsimile)

                                          *Counsel for Defendants Mars, Incorporated and*
                                          *S&M NuTec, LLC*

Of Counsel:

Dane H. Butswinkas, *pro hac vice*
Andrew W. Rudge, *pro hac vice*
Aaron P. Maurer, *pro hac vice*
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (facsimile)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this 23rd day of March, 2007, caused a true and correct

copy of the foregoing:

(i) Defendants' Opposition to Plaintiff's Motion to Compel

to be served by action of this Court's electronic filing system upon:


Peter F. Daniel
Patrick N. Fanning
Amii N. Castle
LATHROP & GAGE L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, Missouri 64108-2684

*Counsel for Plaintiff MGP Ingredients, Inc.*


          /s/ Brian K. O'Bleness_____
          Brian K. O'Bleness, KS Bar No. 77892