IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**MGP INGREDIENTS, INC.,**

    **Plaintiff,**

    v.                                                    Case No.  06-2318-JWL

**MARS, INCORPORATED and
S&M NUTEC, LLC,**

    **Defendants.**

_____

**MEMORANDUM AND ORDER**

This lawsuit involves the popular Greenies® chew for dogs, which has been sold for years by defendant S&M NuTec LLC (SMN) using, until recently, a formulation containing confidential ingredients supplied by plaintiff MGP Ingredients (MGPI). In April of 2006, defendant Mars, Incorporated (Mars) acquired SMN. Plaintiff's complaint generally alleges that Mars destroyed the relationship between SMN and MGPI by treating the agreements between them as unenforceable and by marketing an improved Greenies® dog chew using a purportedly "totally new" Mars formulation. MGPI alleges that, in doing so, Mars infringed on MGPI's Greenies® formulation patent and misappropriated MGPI's trade secrets. This matter is before the court on Defendants' Motion to Review Magistrate Judge Waxse's Orders of March 2, March 5, and March 8, 2007 (doc. #64), which approved the protective order proposed by MGPI limiting the disclosure of trade secrets and other confidential information disclosed in this litigation. Defendants contend that the form of the

protective order is clearly erroneous and contrary to law insofar as the magistrate judge rejected the more restrictive protective order they had proposed. For the reasons explained below, the court overrules defendants' objections because the magistrate judge's analysis was not clearly erroneous or contrary to law.[1]

## BACKGROUND

The nature of the various claims in this case is fully discussed in *MGP Ingredients, Inc. v. Mars, Inc.*, 465 F. Supp. 2d 1109 (D. Kan. 2006), familiarity with which is presumed. The discovery dispute currently at issue pertains to the form of a protective order limiting the disclosure of trade secrets and other confidential information disclosed in this litigation. The parties were unable to reach agreement as to the form of a protective order governing discovery produced in this case. On December 15, 2006, they filed cross motions for protective orders. MGPI proposed a single-tiered protective order whereas defendants proposed a two-tiered protective order under which "highly confidential" information would be disclosed only to outside counsel, experts, and consultants. On March 2, 2007, the magistrate judge entered a text-entry order granting plaintiff's motion and denying defendants' motion (doc. #55); on March 5, 2007, the magistrate judge entered plaintiff's

---

[1] Defendants' request for oral argument is denied. In light of the applicable standard of review, oral argument is unnecessary and would not aid the disposition of the motion. *See* D. Kan. Rule 7.2 (requests for oral argument are granted only at the court's discretion).

proposed protective order (doc. #56); and, on March 8, 2007, he entered a Memorandum and Order (doc. #60) setting forth his analysis and reasoning in deciding the cross motions.

The magistrate judge noted that the parties agree that a protective order is appropriate because discovery in this case will involve the exchange of trade secrets and other proprietary information. Discovery will likely include disclosure of the formulation and process of manufacture for the current Greenies® dog chew and other products, as well as related draft and pending patent applications, research and development work, confidential contracts with suppliers, and closely held financial analyses. The parties disagreed, however, about who should be granted access to the trade secrets and other confidential information that is the subject of the proposed protective orders. MGP proposed a single-tiered order that gives the following persons access to the confidential information: "persons employed by the parties who have responsibility for this lawsuit, who are assisting or involved in the preparation or supervision of this lawsuit, or who are being deposed or are expected to testify in this lawsuit."[2] Defendants, on the other hand, proposed a two-tiered system which distinguishes between "confidential" and "highly confidential" information and which is more restrictive in terms of who may review the information. Under defendants' proposal, "confidential information" may be disclosed only to the parties' outside counsel, experts and consultants retained by each party for purposes of the lawsuit, and three in-house attorneys or patent agents designated by each party to receive confidential information; "highly

---

[2] MGPI's proposed order also grants access to the confidential information to certain other categories of individuals who apparently are unobjectionable to defendants.

confidential information," on the other hand, may be disclosed only to the parties' outside counsel and retained experts and consultants, not to in-house attorneys or patent agents.[3]

The magistrate judge found that the defendants did not show good cause for the two-tiered system they proposed. He explained:

> The Court is not convinced that Plaintiff is a direct competitor of Defendants. Furthermore, the Court finds that Defendants' two-tiered system may hamper Plaintiff's ability to assess the merits of the litigation. It is likely that Plaintiff will be prejudiced if its in-house scientists cannot have access to the confidential and highly confidential information disclosed by Defendants in this case. Plaintiff must be able to rely on its in-house scientists to help direct the litigation, devise legal strategy, and provide assistance to Plaintiff's outside counsel. Given the technical nature of this case, the advice of Plaintiff's in-house scientists with specialized knowledge of the industry could be essential to the proper handling of this litigation by outside counsel.

Mem. & Order (doc. #60), at 5.

Defendants now contend that the magistrate judge's order is clearly erroneous and contrary to law because it allows MGPI, a competitor of defendants, to disclose defendants' trade secrets to in-house MGPI scientists and outside consultants. Defendants argue that the magistrate judge made a clear error in judgment by relying on "MGPI's disingenuous assertion that it and Defendants were not, 'strictly speaking,' competitors" and, consequently, the magistrate judge failed to enter a protective order that balances the harms of disclosure against the risk of impaired litigation.

---

[3] The parties also disagreed about a provision relating to the opposing party's right to object to experts and consultants. At this procedural juncture, however, defendants do not object to this aspect of the magistrate judge's order.

4

## STANDARD OF REVIEW

Magistrate judges may issue orders as to non-dispositive pretrial matters and district courts review such orders under a "clearly erroneous or contrary to law" standard of review. *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461-62 (10th Cir. 1988)); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The clearly erroneous standard applies to factual findings, *see* 12 Charles Alan Wright et al., Federal Practice & Procedure § 3069, at 355 (2d ed. 1997) (and cases cited therein), and "requires that the reviewing court affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Ocelot Oil*, 847 F.2d at 1464 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). By contrast, the "contrary to law" standard permits "plenary review as to matters of law." *See* 12 Wright et al., *supra*, § 3069, at 355; *Haines v. Liggett Group Inc.*, 975 F.2d 81, 91 (3d Cir. 1992); *Computer Econ., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999) ("contrary to law" standard permits independent review of purely legal determinations by a magistrate judge); *Weekoty v. United States*, 30 F. Supp. 2d 1343, 1344 (D.N.M. 1998) (when reviewing legal determinations made by magistrate judge, standard of review is de novo).

## DISCUSSION

There is no absolute privilege for trade secrets and similar confidential information. *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981).

Rule 26(c)(7) of the Federal Rules of Civil Procedure authorizes the court "for good cause shown" to make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden," including that "confidential research, development or commercial information not be revealed or be revealed only in a designated way." A party seeking to resist disclosure under Rule 26(c)(7) must first establish that the information sought is a trade secret or other confidential research, development, or commercial information and then demonstrate that its disclosure might be harmful. *Centurion Indus.*, 665 F.2d at 325-26. If these requirements are met, the burden then shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action. *Id.* Finally, the court must balance the need of the party seeking discovery of the trade secrets and confidential information against the opposing party's claim of injury resulting from the disclosure. *Id.*

The court has broad discretion "to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). The Supreme Court has recognized that "[t]he trial court is in the best position to weigh the fairly competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Id.* (footnote omitted). "Thus, a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule." 8 Charles Alan Wright et al., Federal Practice & Procedure § 2036, at 489 (2d ed. 1994).

In this case, defendants contend, first, that the magistrate judge's factual finding that MGPI is not a direct competitor of defendants is clearly erroneous. Based on the record before the magistrate judge, the court disagrees. In defendants' motion for a protective order and memorandum in support thereof, as well as in their response to plaintiff's motion for a protective order, defendants did not address the extent to which MGPI and defendants are competitors. Thus, the magistrate judge was faced with the representation in MGPI's response brief that "strictly speaking, MGPI and defendants are not 'competitors' because MGPI does not market a finished product." MGPI explained that it is a manufacturer of ingredients that others (such as SMN) use in pet food products. In defendants' memorandum in support of their motion to review the magistrate judge's orders, they argue that this was a "surprise assertion" made for the first time by MGPI in its response in opposition to their motion for a protective order. But, of course, defendants' argument in support of their motion for a protective order was grounded in the notion that defendants and MGPI were competitors. Consequently, the fact that MGPI responded by arguing that they were not competitors was a logical response. Significantly, defendants had the right to file a reply brief to dispute MGPI's assertion, *see* D. Kan. Rule 7.1(c) (providing for the filing of a reply brief); *see also* D. Kan. Rule 6.1(d)(1) (setting forth fourteen-day deadline for replies on non-dispositive motions), yet they apparently chose not to do so. Defendants also had ample time to file a reply, as MGPI's response brief was field on December 29, 2006, and Judge Waxse did not issue his first ruling on the parties' cross motions for protective orders until more than two months later on March 2, 2007.

7

More importantly, however, whether MGPI and defendants are, in fact, competitors is not the sole legally relevant inquiry as to whether the two-tiered protective order sought by defendants is warranted in this case. Rather, the critical inquiry under the line of case law cited by defendants emanates from the oft-cited case of *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984), in which the Federal Circuit concluded that there may be circumstances in which certain sensitive information should not be disclosed to an in-house attorney involved in competitive decision making. *Id.* at 1468. Subsequent cases have looked to whether disclosure of the information to a competitor would allow disclosure to a competitive decision maker who would be virtually unable to compartmentalize the information and not use the information to seek to gain an unfair competitive advantage. *See, e.g.*, *Intervet, Inc. v. Merial Ltd.*, Case No. 06-658, 2007 WL 853110, at *1-*6 (D.D.C. Mar. 21, 2007); *Blanchard & Co. v. Barrick Gold Corp.*, Case No. 02-3721, 2004 WL 737485, at *7-*10 (E.D. La. Apr. 5, 2004); *United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 159-60 (D. Del. 1999) (noting the relevant consideration for disclosure is "whether in-house counsel is involved in competitive decision making such that the attorney 'would have a difficult time compartmentalizing his knowledge'").

It is well settled that defendants have the burden of proving the competitive harm that would befall them by virtue of plaintiff's disclosure to in-house personnel and outside consultants. *See Centurion Indus.*, 665 F.2d at 325 (party seeking to resist disclosure under Rule 26(c)(7) must demonstrate that its disclosure might be harmful); *see also Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 214 (D. Kan. 2002) (noting "the

8

party seeking a protective order has the burden to demonstrate good cause"); *Bryan v. Eichenwald*, 191 F.R.D. 650, 651-52 (D. Kan. 2000) (same). As such, defendants were required to make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (quotation omitted). Defendants did not meet their burden of proving that the lack of a two-tiered protective order will allow disclosure to a competitive decision maker within MGPI who will be virtually unable to compartmentalize the information and not use it to seek to gain an unfair competitive advantage. In defendants' motion for a protective order, defendants made categorical arguments that they would be harmed by the disclosure but they really did not discuss in any meaningful detail how they would suffer the nature or degree of harm that would warrant forcing on plaintiff the far more cumbersome discovery process that they propose.

In this respect, this case is really more akin to those cases in which numerous courts have rejected two-tiered protective orders similar to the one proposed by defendants on the grounds that the party seeking the two-tiered protective order did not establish good cause for the order. *See, e.g.*, *Intervet, Inc.*, 2007 WL 853110, at *1-*6 (reasoning that "there is simply no evidence before me that [the head of intellectual property for the competitor] is a competitive decision-maker"); *Unico Am. Corp. v. Crusader Captive Servcs. LLC*, Case No. 06-CV-231, 2006 WL 2355524, at *1-*2 (N.D. Ill. Aug. 11, 2006) (striking proposed protective order's "highly confidential" designation and the protocol associated with it because "[i]t has been this Court's experience that two-tiered protective orders can be

9

confusing and frequently invite nonproductive satellite litigation"). Two of the cases that are analogous to the facts of this case are *Frees, Inc. v. McMillian*, Case No. 05-1979, 2007 WL 184889, at *1-*5 (W.D. La. Jan. 22, 2007), and *Medtronic Sofamor Danek, Inc. v. Michelson*, Case No. 01-2372, 2002 WL 33003691, at *2-*4 (W.D. Tenn. Jan. 30, 2002). In *Frees*, the court rejected the defendant's proposed two-tiered protective order where the plaintiff claimed that the technology at issue in the case was unique and not easily comprehended, that the plaintiff's trial counsel was not likely to have such expertise, and that if the plaintiff's personnel were not allowed to review the discovered information the plaintiff would be forced to hire an outside consultant which would be expensive and difficult. 2007 WL 184889, at *5. In *Medtronic*, the court also rejected a two-tiered protective order proposed by the plaintiff. There, the court noted that the defendant created all the technology at issue, which made him "uniquely qualified" to evaluate the disputed devices and methods; additionally, the parties had enjoyed a contractual relationship for eight years and a confidential relationship for almost four years. 2002 WL 330033691, at *3. During that time frame, the plaintiff never accused the defendant of misappropriating or improperly disclosing confidential information. *Id.* Based on these considerations, the court found the danger that the defendant would abuse his knowledge of confidential information to be "small" and the impact of prohibiting him access to the confidential documents would "greatly impair his ability to defend himself in the lawsuit" because he "would be unable to assist his attorneys" in issues that were at "the heart of the lawsuit." *Id.* at *4.

Similarly, in this case, plaintiff contends that its in-house personnel have substantial experience in a narrow field that cannot be replaced in the "open market." Prohibiting MGPI employees from having access to discovery materials in this case could impair its ability to prosecute its claims against defendants, at the heart of which is MGPI's allegation that defendants made wrongful use of MGPI's confidential information. MGPI and SMN enjoyed a business relationship in which they shared confidential information in seeking to develop an improved Greenies® formulation, and there is no suggestion that MGPI ever misappropriated that confidential information for its own use. The protective order requires almost[4] all persons who are granted access to confidential information to sign an agreement stating that they have read the protective order and that they agree not to use, permit the use of, or disclose to anyone else the confidential information for any purposes other than this lawsuit. Thus, the risk of anyone abusing his or her knowledge of confidential information appears to be small. Based on the facts and circumstances of this case, then — that is, MGPI's need for access to the confidential information versus defendants' comparative failure to meet their burden of proving any concrete harm resulting from disclosure under the terms set forth in MGPI's proposed protective order — it was not contrary to law for the magistrate judge to reject defendants' proposed two-tiered protective order.

---

[4] The only exception is outside attorneys, and even they are to be "first informed of the existence and contents of the [Protective] Order."

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Review Magistrate Judge Waxse's Orders of March 2, March 5, and March 8, 2007 (doc. #64) is denied.  Defendants' objections to the protective order are overruled.

**IT IS SO ORDERED** this 23rd day of April, 2007.

                                                   s/ John W. Lungstrum  
                                                   John W. Lungstrum  
                                                   United States District Judge