DJW/bh

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**MGP INGREDIENTS, INC.,**

            **Plaintiff,**

                                         **CIVIL ACTION**

**v.**

                                       **No. 06-2318-JWL-DJW**

**MARS, INCORPORATED, et al.,**

            **Defendants.**

**MEMORANDUM AND ORDER**

Pending before the Court is Defendants' Motion to Compel (doc. 92). Defendants seek an order compelling Plaintiff MGP Ingredients (MGPI or Plaintiff) to "provide complete responses" to Defendants' First Interrogatory No. 2, which relates to Plaintiff's misappropriation of trade secrets claims.[1] For the reasons set forth below, the Motion will be denied in part and granted in part.

**I.    Background and Factual Information**

This lawsuit involves the Greenies® chew for dogs, which has been sold for years by Defendant S&M NuTec LLC (SMN). Beginning in approximately 1998, Plaintiff manufactured and supplied the original formulation of the resin that was used by SMN in its original formulation for the Greenies® chew. In April 2006, Defendant Mars, Incorporated (Mars) acquired SMN and developed a purportedly new formulation for the Greenies® chew.

Plaintiff sues SMN and Mars for patent infringement and misappropriation of trade secrets. In addition, Plaintiff sues SMN for breach of three business contracts that SMN entered into with

---

[1]Defs.' Mot. to Compel (doc. 92) at p. 1.

Plaintiff: a Supply Agreement, a Confidentiality Agreement, and a Confidential Technology agreements.

The Confidentiality Agreement entered into by SMN and Plaintiff provided that SMN would use Plaintiff's confidential information solely for doing business with Plaintiff. The CTDA provided for a joint research effort by Plaintiff and SMN for the purpose of developing an improved Greenies® formulation.

## II.      The Interrogatory and Answers at Issue

### A.      Defendants' First Interrogatory No. 2

Defendants' First Interrogatory No. 2 reads as follows:

Please identify all documents and describe in detail all circumstances, communications, and facts that support the allegations of the Third Cause of Action in your Complaint, "Misappropriation of Trade State Secrets," including but not limited to:

- a)   the identity of any and all trade secrets under the Kansas Uniform Trade Secrets Act ("KUTSA") that you allege were misappropriated by Defendants . . . in sufficient detail to establish each element of a trade secret pursuant to KUTSA;
- b)   separately for each trade secret identified pursuant to paragraph 2.a. above, describe in detail the efforts to maintain the secrecy of any such trade secret; and
- c)   separately for each trade secret identified pursuant to paragraph 2.a. above, describe in detail the circumstances, communications and facts that support the allegation that there was a "misappropriation" of any trade secret under KUTSA, including the identity of any persons and/or entities allegedly involved and their role in the misappropriation, the identity of any "improper means," if applicable, and the identity and source of any duty of secrecy or limited use which was breached, if applicable.[2]

---

[2] Defs.' First Set of Interrogs., attached as Ex. 2 to Defs.' Mem. Supp. Mot. to Compel (doc. 93).

### B.     Plaintiff's Initial February 5, 2007 Response

Plaintiff responded to First Interrogatory No. 2 on February 5, 2007 as follows:

> See MGPI's answer to Interrogatory 1 which is incorporated by reference herein.[3] All of the work done by MGPI in relation to the Supply Agreement, the Confidentiality Agreement, and the Confidential Technology Development Agreement was intended by the parties to be a trade secret. The terms of the documents described the intent of the parties to maintain the confidentiality of the work done by the parties. SMN and particularly Joe Roetheli insisted that the work on Greenies® be treated as a trade secret because he and they feared disclosure would aid SMN's competitors in a competitive field.
>
> The documents that support this claim include but are not limited to the Supply Agreement, Confidentiality Agreement, the CTDA and any attachments to those contracts, the documents produced by MGPI in its Rule 26 disclosures that include recipes or the Greenies® resin, the work on the Solubility Summit, exchange of information about testing and development of improvements to the Greenies® formula.
>
> Plaintiff incorporates it's [sic] answer to interrogatory 1a and 1b and 1c to further explain how the violations occurred and who induced or caused the violations. Further discovery may provide additional documentation and MGPI reserves the right to supplement this answer.[4]

### C.     Plaintiff's March 13, 2007 Letter and Compact Disc Containing Documents

After receiving Plaintiff's February 5, 2007 response, counsel for Defendants conferred with Plaintiff's counsel, and Plaintiff agreed to supplement its response. On March 13, 2007, Plaintiff's counsel provided Defendants with a compact disc containing documents "relating to the trade secret

---

[3]First Interrogatory No. 1 asked Plaintiff to identify all documents and to describe in detail all facts that support its tortious interference claim, including the identity of the contracts, the identity of the persons who interfered, the acts that constituted the interference, and any wrongful means employed in each interference. In response, Plaintiff identified the Supply Agreement, the Confidentiality Agreement, and the CTDA as the contracts with which Mars allegedly interfered. It then provided a nine-page narrative answering the other portions of the interrogatory.

[4]Pl.'s Answer to Defs.' First Set of Interrogs., attached as Ex. 2 to Defs.' Mem. Supp. Mot. to Compel (doc. 93).

issue," and which Plaintiff had previously provided with its Rule 26 disclosures.[5] According to Plaintiff, the compact disc contained approximately 1,100 documents.

The letter from Plaintiff's counsel's accompanying the compact disc stated as follows:

> These [documents] contain information and communications with regard to MGPI's work under the CTDA to develop a new Greenies® formula. These documents are offered in supplement to MGPI's interrogatory answers and specifically your request that we better identify the trade secrets that have been misappropriated. Additional documents that would reflect the trade secrets of MGPI that have been misappropriated include any documents created by MARS or SMN that reflect work on the current formula for Greenies® (sometimes called the "Mars formula"). As we have tried to make clear, it is the contention of MGPI that the current formula was created, at least in part by contributions of MGPI, and was created during the time the CTDA was in effect, and therefore MGPI is a 50/50 owner of the current formula. The current formula therefore includes trade secrets of MGPI.[6]

### D.      Plaintiff's April 9, 2007 Supplemental Answer

On April 9, 2007 Plaintiff served a supplemental joint answer to Defendants' First Interrogatories No. 1-3 and 7, in which it identified numerous "collaborative activities between [the parties] on Greenies® Plus products during the period of the CTDA that Mars and SMN have misappropriated by taking all of the results, good and bad, and not paying MGPI, not crediting MGPI with its 505/50 ownership, and not ordering the resin from MGPI."[7] The supplemental answer identifies, for example, a meeting between Plaintiff and SMN in October 2005 at which time possible solutions regarding the digestibility of the Greenies® product were discussed.

---

[5]Mar. 13, 2007 Letter from Peter Daniel to Aaron Maurer, attached as Ex. 4 to Defs.' Mem. Supp. Mot. to Compel (doc. 93).

[6]*Id.*

[7]Pl.s' Supp. Answers to Defs.' Interrogs., attached as Ex. 5 to Defs' Mem. Supp. Mot. to Compel (doc. 93).

**III.    Summary of the Parties' Arguments**

Defendants contend that Plaintiff's initial answer and written supplementations are wholly inadequate to answer First Interrogatory No. 2 as Plaintiff takes the position that virtually all information of a confidential nature that Plaintiff shared with either Defendant is a trade secret. Defendants also contend that Plaintiff's production of the 1,100 documents on a compact disc did not satisfy Plaintiff's duty to answer the interrogatory because Plaintiff failed to satisfy the requirements of Federal Rule of Civil Procedure 33(d). That rule allows a party to produce business records in lieu of a written answer if certain requirements are met.

Plaintiff counters that Defendants' Motion to Compel is an improper attempt by Defendants to revisit the Court's December 7, 2007 ruling (doc. 32) denying Defendants' Motion to Dismiss Plaintiff's trade secret misappropriation claim. Plaintiff characterizes the Motion to Compel as "an exercise in empty harassment."[8] Plaintiff argues that the Kansas Trade Secret Protection Act provides a broad definition of trade secret that includes "a compilation of ideas materials, formulations and lists, some of which may be in the public domain,"[9] and that Plaintiff's initial and supplemental answers to the interrogatory have identified such compilations. Finally, Plaintiff argues, albeit in a conclusory fashion, that its March 2007 production of 1,100 documents satisfied the requirements of Rule 33(d).

**IV.    What Constitutes a Trade Secret**

Before the Court can determine whether Plaintiff has adequately answered Defendants' First Interrogatory No. 2 and, *inter alia*, sufficiently identified the trade secrets that Plaintiff claims

---

[8]Pl.'s. Opp. to Defs.' Mot. to Compel (doc. 104) at p.4.

[9]*Id.*

Defendants have misappropriated, the Court must have an understanding of what constitutes a "trade secret."

Plaintiff's trade secret claim arises under the Kansas Uniform Trade Secrets Act, K.S.A. 60-3320, *et seq.*, (Kansas Trade Secrets Act or Act). Accordingly, Court must look to the Act to determine what constitutes a trade secret. The Act states as follows:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[10]

In order to prevail on a claim for misappropriation of trade secrets, the plaintiff has the burden to produce evidence that the information allegedly misappropriated meets the definition of a trade secret.[11] Thus, in the instant case, in responding to Defendants' interrogatory regarding the identity of the trade secrets that Defendants allegedly misappropriated, Plaintiff must identify information such as a formula, pattern, compilation, program, device, method, technique or process, and that information must (1) have independent economic value, (2) derive its value from not being generally known or readily ascertainable, and (3) have its secrecy maintained by reasonable efforts.[12]

---

[10] K.S.A. 60-3320(4).

[11] *Dodson Int'l Parts, Inc. v. Altendorf*, 347 F. Supp. 2d 997, 1010 (D. Kan. 2004) (citations omitted).

[12] *Id.* (citing *Curtiss 1000, Inc. v. Pierce*, 905 F. Supp. 898, 901 (D. Kan. 1995)).

6

**V.     Analysis**

As Defendants' interrogatory consists of multiple subparts, the Court will examine each subpart separately.[13]

**A.     Subpart a — Identity of the Trade Secrets**

In subpart a, Defendants ask Plaintiff to identify all trade secrets that Plaintiff alleges were misappropriated by Defendants "in sufficient detail to establish each element of a trade secret" under the Kansas Trade Secret Act. As discussed in detail below, the Court finds the Motion to Compel to be moot as to subpart a, as the Pretrial Order identifies the information that Plaintiff contends constitute the misappropriated trade secrets.

The Court held the final Pretrial Conference in this case on October 29, 2007. Prior to the Pretrial Conference, the parties were required to submit their joint proposed Pretrial Order, which contained, *inter alia*, Plaintiff's factual contentions regarding its trade secret claim.[14] In Plaintiff's "Factual Contentions," Plaintiff identified the trade secrets it claims Defendants misappropriated.[15] At the Pretrial Conference, the Court inquired as to whether Defendants had any questions regarding Plaintiff's contentions. Defendants answered in the negative. The Court therefore adopted Plaintiff's contentions, and the Pretrial Order (doc. 234) was entered on November 2, 2007.

---

[13] Although the parties focus their arguments on subpart a, which asks Plaintiff to identify the trade secrets it claims Defendants misappropriated, Defendants request an order compelling Plaintiff to provide a complete answer to Interrogatory No. 2. The Court therefore construes Defendants' Motion as applying to all subparts of First Interrogatory No. 2 and not just subpart a.

[14] *See* parties' proposed Pretrial Order, ¶5.a.5.

[15] *Id.*

It is well settled that the pretrial order supersedes the pleadings and controls the subsequent course of the suit unless modified by a subsequent order to prevent manifest injustice.[16] The pretrial order "measures the dimensions of the lawsuit, both in the trial court and on appeal."[17] "Since the whole purpose of Rule 16 is to clarify the real nature of the dispute at issue, attorneys at a pre-trial conference must make a full and fair disclosure of their views as to what the real issues of the trial will be."[18]

Here, Plaintiff identified in Paragraph 5.a.5 of the proposed Pretrial Order what information it contends are the trade secrets Defendants allegedly misappropriated, and Defendants did not seek clarification about Plaintiff's contentions.[19] As the Pretrial Order controls the subsequent course of the action, the Court deems that the issue of what Plaintiff contends are the trade secrets forming the basis of its misappropriation claims has been determined by the Pretrial Order. Consequently, Defendants' Motion to Compel is moot to the extent it seeks to compel Plaintiff to provide a further response to subpart a of First Interrogatory No. 2.

---

[16]*Youren v. Tintic School Dist.*, 343 F.3d. 1296, 1304 (10th Cir. 2003) (citing Fed. R. Civ. P. 16(e)); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1235 (10th Cir. 2000).

[17]*Id*. (quoting *Tyler v. City of Manhattan*, 118 F.3d 1400, 1403 (10th Cir. 1997)).

[18]*Id.* (quoting *Rios v. Bigler*, 67 F.3d 1543, 1549 (10th Cir. 1995)).

[19]The Court recognizes that ¶9.b of the Pretrial Order identifies one of the "legal issues" in the case to be "[w]hether MGP has alleged and/or identified through discovery any 'trade secret' that it owns and that is subject to protection under the trade secret laws." The Court construes this to mean an issue exists as to whether the claimed trade secrets identified in Plaintiff's contentions actually constitute "trade secrets" within the meaning of the Kansas Trade Secrets Act. This "legal issue" therefore does not change the Court's ruling as to the mootness of the Motion to Compel with respect to subpart a of First Interrogatory No. 2.

**B.      Subpart b — Efforts to Maintain Secrecy of the Trade Secrets**

Subpart b of First Interrogatory No. 2 asks Plaintiff to identify for each identified trade secret the efforts taken to maintain the secrecy of the trade secret.  Plaintiff contends that Judge Lungstrum's ruling denying the Motion to Dismiss the misappropriation claim is dispositive of whether Plaintiff's response to Interrogatory No. 2 is sufficient.  In other words, Plaintiff argues that because Judge Lungstrum found the Complaint to state a cause of action for misappropriation of trade secrets, Plaintiff has adequately responded to Defendants' interrogatory.

The Court is not persuaded by Plaintiff's argument.  The standard for ruling on a motion to dismiss simply is not the same standard used to determine the sufficiency of an interrogatory answer.  In ruling on a Rule 12(b)(1) motion to dismiss, a court must accept all well-pleaded facts and make all reasonable inferences from those facts viewed in favor of the plaintiff.[20]  A claim will be dismissed only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief."[21]

In contrast, a court has broad discretion in determining the sufficiency of an interrogatory answer.[22]  Generally speaking, courts apply a common-sense approach and will examine whether the answer is "responsive, full, complete and unevasive."[23]  It is this standard that the Court must

---

[20]*See* Dec. 7, 2007 Mem. and Order (doc. 32) at p. 5 (citing *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005)).

[21]*Id.* (citing *Beedle*, 422 F.3d at 1063 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957))).

[22]*W. Electric Co. v. Stern*, 551 F.2d 1, 2 (3d Cir. 1976); *EEOC v. Tecumseh Prods. Co.*, No. C-78-1004, 1980 WL 2199, at *1 (W.D. Tenn. Nov. 28, 1980).

[23]*Hearltand Surgical Specialty Hosp., LLC v. Midwest Div., Inc*., No. 05-2164-MLB-DWB, 2007 WL 2192860, at *1 (D. Kan. July 25, 2007) (quoting *Continental Ill. Nat'l Bank & Trust Co. v. Caton,* 136 F.R.D. 682, 684 (D. Kan. 1991) ("The answers to interrogatories must be responsive,
(continued...)

apply in examining the sufficiency of Plaintiff's interrogatory answer in this case. The Court therefore rejects Plaintiff's argument that Judge Lungstrum's ruling on the Motion to Dismiss is determinative of the Motion to Compel.

The Court will thus proceed to determine whether Plaintiff has provided "responsive, full, complete and unevasive" responses to subparts b and c of Defendant's First Interrogatory No. 2.

### 1. *Plaintiff's initial February 5, 2007 response*

The Court does not find Plaintiff's initial response to the interrogatory to be responsive to the question of what steps Plaintiff took to maintain the secrecy of its alleged trade secrets. While Plaintiff states in its initial response that the Supply Agreement, the Confidentiality Agreement, and the CTDA "describe[] the intent of the parties to maintain the confidentiality of the work done by the parties,"[24] that statement reflects only an *intent* to maintain secrecy and does not identify *any steps taken* to maintain secrecy. Plaintiff goes on to state that "Joe Roetheli insisted that the work on Greenies be treated as a trade secret" because he feared disclosure would aid SMN's competitors.[25] That statement, however, hardly describes "in detail" all efforts taken by Plaintiff to maintain secrecy of the trade secrets.

Plaintiff's initial response also states that certain documents "support this claim." The Court finds this statement insufficient to answer subpart b. The Court construes Plaintiff's reference to "this claim" to be a general reference to Plaintiff's claim for misappropriation.

---

[23](...continued)
full, complete and unevasive."); *see also* Fed. R. Civ. P. 37(a)(2)(B) and (a)(3) (propounding party may move to compel under Rule 37 where party responds to an interrogatory in evasive or incomplete manner).

[24]Pl.s' Answer to Defs.' First Set of Interrogs., attached as Ex. 2 to Defs.' Mem. Supp. Mot. to Compel (doc. 93).

[25]*Id.*

10

Finally, Plaintiff's initial response incorporates by reference its answer to First Interrogatory No. 1. Plaintiff's answer to that interrogatory, however, is a nine-page narrative which addresses Plaintiff's tortious interference claim, including the identity of the underlying contracts, the identity of the person who allegedly interfered with those contracts, the alleged acts of interference, and the alleged improper purposes behind the alleged interference. Plaintiff's answer to First Interrogatory No 1 simply is not responsive to subpart b of First Interrogatory No. 2.

*2. Plaintiff's March 13, 2007 letter and compact disc containing documents*

The Court also finds Plaintiff's counsel's March 13, 2007 letter and compact disc containing 1,100 documents to be an insufficient response to subpart b. The letter explains that (1) the compact disc contains documents relating to Plaintiff's work under the CTDA to develop a new Greenies formula, and (2) the documents identify the trade secrets Plaintiff claims Defendants misappropriated. Nowhere in the letter does Plaintiff's counsel state that the documents respond to subsection b of the interrogatory or that they reflect the efforts taken to maintain the secrecy of the alleged trade secrets.

In fact, based on Plaintiff's description of the documents, the documents do not appear to be responsive to subpart b. Even assuming arguendo that some of the documents are responsive, Plaintiff has failed to satisfy its duty under Rule 33 for producing documents in lieu of providing a written response.

This Court has held that a party may satisfy its duty under Rule 33 through the production of documents in one of two ways. One way is for the answering party to refer to specific documents attached to its answers to the interrogatories; the second way is for the answering party to

11

affirmatively elect to produce its business records in accordance with Rule 33(d).[26] Here, Plaintiff has done neither. Plaintiff has not attached a discrete set of documents to its interrogatory answers, but has instead provided Defendants with approximately 1,100 documents that were previously provided to Defendants as part of Plaintiff's Rule 26(a)(1) disclosures.[27] Nor has Plaintiff produced business records in compliance with Rule 33(d), as it has failed to meet at least three of the requirements for producing business records under that rule. First, Plaintiff failed to affirmatively indicate that it was making a specific election under Rule 33(d) to produce business records in lieu of providing a written answer.[28] Second, Plaintiff failed to specifically designate the particular business records that answer subpart b so as to permit Defendants to readily locate and identify the records from which the answer can be determined.[29] Rather, Plaintiff merely provided Defendants with 1,100 documents and gave no directions as to which particular documents were responsive to subpart b of the interrogatory. Third, Plaintiff has failed to demonstrate that the burden of deriving

---

[26]*Allianz Ins. Co. v. Surface Specialties, Inc.,* No. CIV. A. 03-2470-CM-DJW, 2005 WL 44534, at *4 (Jan. 7, 2005); *DIRECTV v. Puccinelli*, 224 F.R.D. 677, 680-81 (D . Kan. 2004); *Zapata v. IBP, Inc*., No. Civ. A. 93-2366-EEO, 1997 WL 50474, at *1 (D. Kan. Feb. 4, 1997).

[27]*Azimi v. United Parcel Serv., Inc*., No. 06-2114-KHV-DJW, 2007 WL 2010937, at *11 (D. Kan. July 9, 2007) ("[P]arty may not merely refer another party to documents hoping the other party will be able to glean the requested information from them.") (internal quotations and citation omitted).

[28]*See Pulsecard, Inc. v. Discover Card Servs., Inc*., 168 F.R.D. 295, 305 (D. Kan. 1996) (answering party must make a specific election under Fed. R. Civ. P. 33(d) when producing business records in lieu of providing written answer).

[29]*See id*. ("[R]espondent must . . . specifically designate what business records answer each interrogatory.").

the answer to subpart b from the documents is substantially the same for Defendants as it is for Plaintiff.[30]

Consequently, the Court finds that Plaintiff's March 13, 2007 letter and production of a compact disc containing 1,100 documents constitute an insufficient response to subpart b of the interrogatory.

### 3. *Plaintiff's April 9, 2007 Supplemental Answer*

The Court also finds Plaintiff's April 9, 2007 supplemental response to be an insufficient response to subpart b. As noted above, Plaintiff's supplemental response identifies numerous "collaborative activities between [the parties] on Greenies® Plus products during the period of the CTDA." Nothing in the supplemental response refers to or describes any efforts taken to maintain secrecy of the alleged trade secrets.

### 4. *Conclusion as to subpart b*

In sum, the Court finds that Plaintiff has failed to adequately respond to subpart b of First Interrogatory No. 2. The Court therefore grants the Motion to Compel with respect to subpart b. Within **ten (10) days** of the date of this Order, Plaintiff shall serve an amended *written* answer to subpart b that is complete, responsive, and unevasive. Plaintiff may *not* produce business records in lieu of providing an amended written answer.[31]

---

[30]*See id*. (burden of deriving the interrogatory answer from business records must be substantially the same for the party seeking the information as the responding party).

[31]Given the upcoming November 30, 2007 dispositive motion deadline, time is of the essence in completing this discovery. The Court believes a written answer would the most efficient and effective way for Plaintiff to respond to the interrogatory.

13

### C.     Subpart c — Information Regarding the Alleged Misappropriation

Subpart c of First Interrogatory No. 2 asks Defendants to provide various information regarding the alleged acts of misappropriation. It asks Plaintiff to "describe in detail," for each trade secret identified, "the circumstances, communications, and facts that support the allegation there was a 'misappropriation,'" including the identity of any persons or entities involved in the misappropriation and their role in the misappropriation. It also asks Defendants to identify any "improper means" used in the alleged misappropriation and the source of any duty of secrecy or limited use that may have been breached.

####     *1.     Plaintiff's initial February 5, 2007 response*

The Court does not find Plaintiff's initial response to First Interrogatory No. 2 to be responsive to this subpart. While Plaintiff does state that it incorporates its answer to First Interrogatory No. 1 "to further explain how the violations occurred and who induced or caused the violations," the Court does not find Interrogatory No. 1 to actually provide that information. Interrogatory No. 1 identifies the individuals whom Plaintiff claims tortiously interfered with Plaintiff's contracts and simply is not responsive to the questions posed in subpart c regarding the alleged misappropriation of trade secrets.

####     *2.     Plaintiff's March 13, 2007 letter and compact disc containing documents*

Similarly, the Court finds Plaintiff's counsel's March 13, 2007 letter and production of the compact disc containing 1,100 documents to be an insufficient response to subpart c. As noted above, the letter explains that the documents relate to Plaintiff's work under the CTDA to develop a new Greenies formula and states that the documents identify the trade secrets Defendants allegedly misappropriated. Nowhere in the letter does Plaintiff's counsel state that the documents respond to

14

subpart c of the interrogatory or that they provide information about the circumstances of the misappropriations or the identities of those involved in the misappropriations.

Also, for the same reasons discussed above in connection with subpart b, the Court holds that Plaintiff's production of the 1,100 documents in lieu of providing a written answer to subpart c is an insufficient response.

### 3. *Plaintiff's April 9, 2007 Supplemental Answer*

Plaintiff's April 9, 2007 supplemental joint answer to First Interrogatories No. 1, 2, 3, and 7 identifies numerous "collaborative activities between [the parties] on Greenies® Plus products during the period of the CTDA that Mars and SMN have misappropriated by taking all of the results, good and bad, and not paying MGPI, not crediting MGPI with its 505/50 ownership, and not ordering the resin from MGPI."[32]  While this supplemental answer provides some information responsive to subpart c, the Court does not find it to be a complete and fully responsive answer. The supplemental answer does not provide the requested information *as to each identified trade secret* nor does it provide all of the requested information.

### 4. *Conclusion as to subpart c*

For the foregoing reasons, the Court finds that Plaintiff has failed to adequately respond to subpart c of First Interrogatory No. 2. The Court therefore grants the Motion to Compel with respect to subpart c. Within **ten (10) days** of the date of this Order, Plaintiff shall serve an amended *written* answer to subpart c that is complete, responsive, and unevasive. Plaintiff may *not* produce business records in lieu of providing an amended written answer.

---

[32]Pl.s' Supp. Answers to Defs.' Interrogs., attached as Ex. 5 to Defs' Mem. Supp. Mot. to Compel (doc. 93).

15

## VI.     Award of Fees and Expenses

Federal Rule of Civil Procedure 37(a)(4) governs the award of fees and expenses in connection with motions to compel. Subsection (a)(4)(C) allows a court to award a reasonable amount of fees and expenses where a motion is granted in part and denied in part.[33] Under that rule, the court "may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner."[34]

Here, the Court has granted the motion in part. Thus, an award of fees and expenses pursuant to Rule 37(a)(4)(C) may be appropriate. Before the Court may make such an award, however, the non-moving party must be afforded the "opportunity to be heard."[35] An actual hearing is not necessary, and the Court may consider the issue of fees and expenses "on written submissions."[36] The "written submission" requirement is met where the moving party requests fees and expenses in its motion or supporting brief and the opposing party is given the opportunity to submit a brief in response.[37]

Here, Defendants did not request fees or expenses in their motion. Thus, Plaintiff has not been given sufficient "opportunity to be heard," and the Court will decline to award any fees or expenses at this time. To satisfy the "written submissions" rule, the Court will direct Plaintiff and/or

---

[33] *Cardenas v. Dorel Juvenile Group, Inc.,* 230 F.R.D. 635, 639 (D. Kan. 2005) (citing Fed. R. Civ. P. 37(a)(4)(C)).

[34] *Id.*

[35] *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 697 (D. Kan. 2000) (citing Fed. R. Civ. P. 37(a)(4)); *Fears v. Wal-Mart Stores, Inc.*, No. 99-2515-JWL, 2000 WL 1679418, at *6 (D. Kan. Oct. 13, 2000).

[36] *Fears*, 2000 WL 1679418 at *6 (citing Advisory Committee Note to the 1993 Amendments to Rule 37(a)(4)).

[37] *Id.*

16

its counsel to show cause, in writing, within **thirty (30) days** of the date of filing of this Order, why the Court should not require either or both of them[38] to pay at least a portion of the reasonable attorney fees and expenses incurred by Defendants in making the Motion to Compel. Defendants shall have **fourteen (14) days** thereafter to file a response thereto, if they so choose. In the event the Court determines that fees and expenses should be awarded, the Court will issue an order setting forth a schedule for the filing of an affidavit reflecting the amount of fees and expenses that Defendants have incurred, and for the filing of any related briefs.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel (doc. 92) is denied as moot with respect to subpart a of First Interrogatory No. 2, and granted with respect to subparts b and c of said interrogatory. Within **ten (10) days** of the date of this Order, Plaintiff shall serve amended written answers to subpart b and c of Defendants' First Interrogatory No. 2, in accordance with this Order.

**IT IS FURTHER ORDERED** that Plaintiff and/or its counsel shall show cause, in writing, within **thirty (30) days** of the date of filing of this Order, why the Court should not require either or both of them to pay a portion of the reasonable attorney fees and expenses incurred by Defendants in making the Motion to Compel.

---

[38] To the extent possible, sanctions, including expenses and fees, should be imposed only upon the person or entity responsible for the sanctionable conduct. *McCoo*, 192 F.R.D. at 697. The sanctioning of a party, as opposed to the party's counsel, "requires specific findings that the party was aware of the wrongdoing." *Id.* At present, the Court has no evidence that Plaintiff itself was responsible for the responses at issue. However, if Plaintiff or its attorneys wish to provide the Court with any information in this regard, Plaintiff and/or its counsel may do so in the pleading provided to the Court pursuant to the briefing schedule set forth herein. The Court will defer ruling on this issue until it has received the parties' briefs.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 6th day of November 2007.

s/ David J. Waxse<br>
David J. Waxse<br>
U.S. Magistrate Judge

cc:   All counsel and pro se parties